UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MICHELLE R. WENTWORTH,**

        Petitioner,

   v.                                                  95-CR-144(HGM)

**UNITED STATES OF AMERICA,**

        Respondent.
_____

**APPEARANCES:**                               **OF COUNSEL:**

CARL F. GUY, ESQ.
Attorney for Petitioner
850 Fay Road
Syracuse, New York 13219

GLENN T. SUDDABY                      JOHN G. DUNCAN
UNITED STATES ATTORNEY          Assistant United States Attorney
FOR THE NORTHERN DISTRICT OF NEW YORK
Attorney for Respondent
Post Office Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**HOWARD G. MUNSON**
**Senior United States District Judge**

## MEMORANDUM - DECISION AND ORDER

      Currently before the Court is Petitioner's motion requesting a certificate of innocence pursuant to 28 U.S.C. § 2513, so that she may sue the federal government in the Federal Court of Claims under 28 U.S.C. § 1495 for her unjust conviction. *See* Dkt. No. 206. The Government opposes Petitioner's motion. *See* Dkt. No. 211. For the reasons that follow below, the Court DENIES Petitioner's motion requesting a certificate of innocence.

## BACKGROUND

On April 14, 1994, Michelle Campbell, the nineteen-year-old daughter of Petitioner, Michelle Wentworth ("Petitioner" or "Wentworth"), entered the Planned Parenthood Center of Syracuse and poured a quantity of butyric acid into a heating duct. Butyric acid is a noxious and malodorous chemical, the inhalation of which can induce nausea, vomiting, dizziness, and a burning sensation in the eyes, throat, and respiratory system. Within minutes of the "spill," the smell of butyric acid permeated the premises. Despite the efforts of the Syracuse Fire Department's Hazardous Material Squad to neutralize the butyric acid, the noxious odor persisted throughout the building and the clean-up extended over the next week. Campbell perpetrated a similar attack on May 19, 1994 at the medical offices of Dr. Jack Yoffa in East Syracuse. Both facilities, which offered abortion services in addition to other medical services, had previously been the target of demonstrations by anti-abortion advocates, including Defendants John Arena and Wentworth.

In early June 1994, local law enforcement identified Campbell as the perpetrator of the butyric acid attacks and arrested her on criminal mischief charges. Campbell cooperated with the police and revealed that she had carried out the attacks at the behest of her mother, the Petitioner in this case, and John Arena. Petitioner was then the Chairperson of the Auburn Right to Life Movement and a member of Operation Rescue while Arena was a member of the Auburn Right to Life Movement. Arena and Petitioner had informed Campbell that people in the above organizations were interested in having butyric acid dumped in abortion clinics in Syracuse, particularly the Planned Parenthood facility. Campbell also revealed that her mother indicated that Arena was willing to pay $100 per abortion clinic to have butyric acid poured in clinics in the Central New York area.

On April 13, 1994, Arena, Petitioner, and Campbell met at Petitioner's house to discuss arrangements for carrying out a butyric acid spill at the Syracuse Planned Parenthood Center. Arena provided Campbell with the butyric acid and other materials relevant to the attacks and instructed

Campbell on how to pour the acid inside the Planned Parenthood Center so it would circulate in the building's air system, stating that it would close the Center down for three days. Arena, Petitioner, and Campbell also agreed to Campbell's payment for each attack.

Arena and Petitioner were charged by New York State authorities in June and August of 1994 with crimes arising out of these butyric acid attacks. New York State charges under the penal law and environmental conservation law included two felony counts of criminal mischief in the second degree, two misdemeanor counts of endangering public health, safety, or the environment in the fourth degree, and one misdemeanor count of conspiracy in the fifth degree. On November 29, 1994, Arena pled guilty to all counts in state court. On December 7, 1994, an Onondaga County court jury convicted Wentworth in state court of two felony counts of criminal mischief in the second degree and one misdemeanor count of conspiracy in the fifth degree. *See* Dkt. No. 211 at Ex. A. On February 2, 1995, both Wentworth and Arena were sentenced in state court to five years of probation.

On February 6, 1995, United States Attorney Thomas J. Maroney sought permission from the United States Department of Justice for a waiver of the Department's Petite[1] policy and approval to proceed with a federal prosecution. The United States Attorney sought permission on the basis that a federal interest, specifically, the right of citizens to obtain reproductive health services free from threats of force and violence, was demonstrably unvindicated by the state prosecution. On February 17, 1995, the United States Attorney received authorization from the Department of Justice to proceed with a federal prosecution on the basis of an unvindicated federal interest.

On April 20, 1995, a federal grand jury indicted John Arena and Petitioner with two counts of extortion and one count of conspiracy to commit Hobbs Act extortion in violation of 18 U.S.C.

---

[1] Petite v. United States, 361 U.S. 529, 530-31, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960).

§ 1951. After an eight-day trial held between December 11 and December 21, 1995, the empaneled jury found Arena and Wentworth guilty of two counts of extortion and one count of conspiracy to commit extortion in violation of the Hobbs Act. On January 28, 1997, following several lengthy adjournments of sentencing requested by Arena, the court sentenced Petitioner to a term of imprisonment of thirty-seven months on each count, to run concurrently, and sentenced Arena to forty-one months imprisonment on each count, to run concurrently. The court also ordered both Defendants to pay, jointly and severally, restitution in the amount of $52,062.11, as follows: $35,233.98 to Aetna Insurance Company; $1,000 to Planned Parenthood Center of Syracuse; $15,089.38 to American States Insurance Company; and $738.75 to Jack E. Yoffa, M.D., P.C. Upon their release from prison, both Defendants were ordered to be placed on three years of supervised release.

On June 7, 1999, the Second Circuit affirmed Petitioner's and Arena's convictions on appeal. The United States Supreme Court denied certiorari on October 2, 2000. On February 26, 2003, however, the Supreme Court decided Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), interpreting the Hobbs Act to require that the perpetrator obtain property from the victim rather than merely depriving the victim of a property right. Id. at 404–05. Wentworth then petitioned this Court for a writ of error *coram nobis* to vacate and expunge her Hobbs Act convictions. *See* Dkt. No. 199. The Government agreed that Scheidler had changed the definition of extortion under the Hobbs Act such that it no longer applied to Petitioner and did not oppose her application. On August 3, 2004, the Court issued an order vacating and expunging Petitioner's convictions for extortion and conspiracy to commit extortion under the Hobbs Act. *See* Dkt. No. 201. Petitioner now requests a certificate of innocence pursuant to 28 U.S.C. § 2513 as a prerequisite to pursuing an unjust conviction claim against the federal government in the Federal Court of Claims pursuant to 28 U.S.C. § 1495. *See* Dkt. No. 206.

**DISCUSSION**

Petitioner seeks to pursue an unjust conviction claim against the federal government pursuant to 28 U.S.C. § 1495, which states that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." Section 1495, however, must be read in conjunction with 28 U.S.C. § 2513, which provides in pertinent part that:

> Any person suing under section 1495 of this title must allege and prove that: (1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and (2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

"A certificate of innocence serves no purpose other than to permit its bearer to sue the government for damages." Betts v. United States, 10 F.3d 1278, 1283 (7th Cir. 1993). The purpose of Sections 1495 and 2513 "is to partially right an irreparable wrong done to a United States citizen who was wrongfully imprisoned through financial compensation." Id. at 1283-84 (citing McLean v. United States, 73 F.Supp. 775, 778 (D.C.S.C. 1947)). The legislative history, however, "indicates that Congress did not intend to indemnify every imprisoned person whose conviction had been set aside." Id. at 1284 (citing United States v. Keegan, 71 F.Supp. 623, 635 (D.C.N.Y. 1947)).

When deciding whether to issue the certificate, "the district court must consider whether the petitioner . . . committed the acts charged and, if so, whether those acts constituted a criminal offense . . . but the court makes that determination independent of the outcome of the trial or appeal, taking into account not only whether the petitioner was innocent but also whether he may be deemed responsible for his own prosecution." Betts, 10 F.3d at 1283; *see also* Osborn v. United States, 322

F.2d 835, 840 (5th Cir.1963) ("[T]he claimant must be innocent of the particular charge and of any other crime or offense that any of his acts might constitute.") (quoting H.R.Rep. No. 2299, 75th Cong., 3d Sess. 2).

With respect to Petitioner's request, Scheidler's holding necessitated the Court vacating and expunging Petitioner's federal convictions for extortion and conspiracy to commit extortion under the Hobbs Act, and thus Petitioner satisfies the first prong of § 2513. Scheidler's holding, however, left Petitioner's state court convictions undisturbed. Undaunted, Petitioner raises three arguments in support of her request: (1) Petitioner attempts to distinguish her state court convictions by arguing that she was not sentenced to prison but instead received five years' probation, *see* Dkt. No. 206, Pet'r's Mem. of Law at 2-3; (2) Petitioner argues that for purposes of § 2513 she did not commit extortion under the law of the State of New York, *see* id. at 6; and (3) Petitioner reasserts[2] claims of prosecutorial misconduct and double jeopardy. *See* id. at 7-10. The Court addresses these arguments *seriatim*.

Petitioner's first argument is without merit. Section 2513 simply does not address the type or severity of punishment imposed at sentence and thus makes no distinction, for example, between sentences of probation stemming from proceedings in state court and imprisonment stemming from proceedings in federal court. The question is whether the acts underlying Petitioner's federal charges constituted an offense against the United States or any State. *See* 28 U.S.C. § 2513(a)(2). The conduct underlying Petitioner's state convictions, *i.e.*, her role in the butyric acid attacks, was the same conduct that prompted her federal prosecution under the Hobbs Act. Petitioner remains convicted in state court of two felony counts of criminal mischief in the second degree and one misdemeanor count of conspiracy in the fifth degree, *see* Dkt. No. 211 at Ex. A, and, therefore,

---

[2]Petitioner previously raised these arguments with both this Court, *see* United States v. Arena, 918 F.Supp. 576-77 (N.D.N.Y. 1996), and the Second Circuit. *See* United States v. Arena, 180 F.3d 380, 399-400 (2d Cir. 1999).

Petitioner's acts constituted an offense under the laws of the State of New York, and she was sentenced accordingly.

Petitioner's second argument similarly lacks merit. As far as § 2513 is concerned, Petitioner's argument that her state court convictions for two felony counts of criminal mischief in the second degree and one misdemeanor count of conspiracy in the fifth degree do not mirror her now-vacated federal convictions in their statutory substance is of no consequence and wholly misses the thrust of § 2513. The conduct underlying Petitioner's state convictions, *i.e.*, her role in the butyric acid attacks, was the same conduct that prompted her federal prosecution under the Hobbs Act. In applying § 2513, the question is whether the acts underlying Petitioner's federal charges constituted an offense under either federal or state law. *See* 28 U.S.C. § 2513(a)(2). A jury found that Petitioner's conduct constituted an offense under the law of the State of New York, and she was sentenced accordingly. *See* Dkt. No. 211 at Ex. A. Petitioner fails to satisfy the second prong of § 2513 because the acts and deeds, *i.e.*, her role in the butyric acid attacks, which prompted her federal prosecution also constituted an offense under the law of the State of New York. *See* 28 U.S.C. § 2513(a)(2).

Petitioner's third argument runs far afield of § 2513's purview. Setting aside that significant hurdle for a moment, the Court revisits its 1996 decision in which it explained that under the dual sovereignty doctrine the Double Jeopardy Clause does not prevent two governments, *e.g.* the United States and New York, from prosecuting one defendant for the same conduct, "for the defendant has offended both sovereigns." United States v. 38 Whalers Cove Drive, 954 F.2d 29 (2d Cir.), *cert. denied sub nom*.; Levin v. United States, 506 U.S. 815, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992); Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (upholding state prosecution after federal prosecution); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (upholding federal following state). Although the Court noted the Bartkus case's narrow

exception to the dual sovereign doctrine, it found "[t]he evidence of collusion between state and federal prosecutors in this case falls far below the lofty threshold necessary to trigger the Bartkus exception[;] . . . the evidence does not tend to show that the United States Attorney was a tool of the District Attorney, or that the federal prosecution was a sham or cover for another state prosecution: the Bartkus exception is inapplicable." United States v. Wentworth, 918 F.Supp. at 577. The Second Circuit reached the same conclusion. See United States v. Wentworth, 180 F.3d at 400 ("Wentworth has presented no evidence that the State of New York was acting at the behest of the federal government in bringing the state charges against her, or that the federal government acted as an agent of the State in prosecuting her for violation of the Hobbs Act . . . We see no violation of Wentworth's right to be free from double jeopardy.").

In any event, Petitioner's claims of prosecutorial misconduct and violation of the Fifth Amendment's double jeopardy clause are irrelevant to the Court's analysis of her request for a certificate of innocence. At the risk of redundancy, the question is whether Petitioner's conduct constituted an offense under either state or federal law. Clearly, a jury found that Petitioner's conduct constituted an offense under the law of the State of New York, and she was sentenced accordingly. See Dkt. No. 211 at Ex. A. Petitioner's motion requesting a certificate of innocence is DENIED.

## CONCLUSION

**WHEREFORE,** after careful consideration of the record in this matter, including the parties' submissions and oral argument, the Court hereby

**DENIES** Petitioner's motion requesting a certificate of innocence pursuant to 28 U.S.C. §

2513.

**IT IS SO ORDERED.**

Dated: May 23, 2006
Syracuse, New York

                                                    */s/ Howard G. Munson*
                                                    Howard G. Munson
                                                    Senior U.S. District Judge